UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**BEN MOORLET,**<br><br>Defendant. | 2:25-CR-20155-TGB-DRG<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF NO. 20)** |

Defendant Ben Moorlet was arrested by Warren Police following a report of an alleged armed robbery that occurred three days earlier. Moorlet also had outstanding arrest warrants from Detroit, Troy, and West Branch, Michigan at that time. During the arrest, Moorlet told the officers he had a gun in his coat, which he had left in the car. Officers later recovered the gun and Moorlet was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Moorlet now moves to suppress the gun, arguing that the officers lacked probable cause to arrest him for armed robbery and that the Warren police officers lacked authority to arrest him outside the City of Warren. ECF No. 20. The government filed a response in opposition, ECF No. 26, to which Moorlet did not reply.

A hearing was held on November 14, 2025, at which counsel for the government and Moorlet appeared and argued. For the reasons set forth below, the Court will **DENY** Defendant's Motion to Suppress Evidence.

1

## I. BACKGROUND

**A. The Armed Robbery Offense**

On December 7, 2024, Warren police responded to a report of an armed robbery. Redacted Police Report, ECF No. 26-2, PageID.143. The victim explained to police that he had purchased a tattoo two weeks earlier from a tattoo artist with the Instagram handle "26inkk" and Cashapp account "Suave," later identified as Moorlet. *Id.* The victim transferred $26 to Moorlet for the tattoo before Moorlet arrived at the victim's apartment on November 23, 2024. *Id.* After giving the victim the tattoo at his house, Moorlet forced the victim to transfer more money to him via Cashapp by pinning the victim down on the couch and pressing a gun to his chest. The victim ultimately sent Moorlet $712. *Id.* at PageID.142.

The victim's Ring doorbell camera on the date of the incident captured an image of Moorlet wearing a green puffy winter jacket, black pants, a black and blue checkered Zoo York brand backpack, white and black shoes, and a black baseball cap with "f*ckOPPS" on it. *Id.* PageID.144. Police reviewed the Instagram page for "26inkk" and found a picture of Moorlet wearing the same "f*ckOPPS" hat and white and black tennis shoes. *Id.*

After identifying Moorlet as a potential suspect using facial recognition technology, police conducted a double-blind lineup where the victim positively identified Moorlet as the robber. *Id.* PageID.144, 162–

68. The Warren police also learned that Moorlet had three outstanding arrest warrants issued by courts in Detroit, Troy, and West Branch, Michigan, the last for assault and battery. *Id.* PageID.144; Redacted LIEN, ECF No. 26-5.

On December 9, 2024, Warren police obtained a warrant for Moorlet's cell phone records and "pings" of his phone location. ECF No. 26-2, PageID.148, 172–95. And on December 10, 2024, the 37th District Court for Warren, Michigan issued a complaint and arrest warrant charging Moorlet with armed robbery, possession of a firearm by prohibited person, stealing/retaining a financial transaction device, and three counts of felony firearm. Docket, ECF No. 26-3, PageID.250–53. After swearing out the complaint, the court signed an arrest warrant, though the warrant was dated for the next day, December 11, 2024. Felony Warrant, ECF No. 26-4.

After the complaint was sworn out, Warren police reviewed ping data obtained from the state search warrant, which placed the phone number associated with Moorlet at an apartment in Detroit. ECF No. 26-2, PageID.148. Warren police went to the location and surveilled the apartment, where they saw Moorlet exit wearing the same green puffy jacket and carrying the same black and blue checkered Zoo York brand backpack police observed in the image from the Ring doorbell camera at the scene of the alleged armed robbery. Moorlet got into a hired car. *Id.* PageID.148–49.

3

Officers stopped the car and arrested Moorlet for armed robbery as well as his other outstanding warrants. *Id.* The record includes a transcript of the video from the body-worn camera of one of the officers, as well as the bodycam video footage. BodyCam Video Transcript, ECF No. 26-6; 7/2/2025 Text-Only Order acknowledging receipt of video.[1] Moorlet asked the officers what he was being arrested for and an officer told Moorlet that he has "three warrants for your arrest." ECF No. 26-6, PageID.268–70; BodyCam Video at 1:20. Moorlet acknowledged that he had one warrant for assault from "up north" in West Branch and "something in Troy." ECF No. 26-6, PageID.269–70; BodyCam Video at 1:21, 2:04–2:09. The officers later explained that Moorlet was also being arrested in connection with the charges stemming from the November 23, 2024 armed robbery. ECF No. 26-6, PageID.272–73; BodyCam Video at 4:00–5:00.

As the police officers were arresting Moorlet, they asked him if he had any weapons or a gun in the car. ECF No. 26-6, PageID.269; BodyCam Video at 1:31. Moorlet stated that he had a gun in his green coat that was in the car. ECF No. 26-6, PageID.269; BodyCam Video at 1:32–1:45. Moorlet also admitted that he knew he was a felon in possession. ECF No. 26-6, PageID.274; BodyCam Video at 5:33–5:42.

---

[1]  During the hearing on this motion, defense counsel spoke about other officers' bodycam videos, but those videos are not part of the record, and defense counsel did not move to supplement the record with those videos, so the Court will not consider them here.

4

Moorlet then gave the officers express permission to search his belongings that were in the car. *Id.* ("[Y]'all can search that shit. I give you permission."). The officers arrested Moorlet, leaving the firearm in the car so they could photograph it. They then recovered the firearm, a Sarsilmaz, Model Sar 9, 9mm pistol with an extended magazine. ECF No. 26-2, PageID.140–41.

According to the sworn affidavit in support of the Criminal Complaint in this case, Moorlet had previously pled guilty to felony Home Invasion, first degree, in 2011. ECF No. 1, PageID.3. The affidavit does not state what sentence Moorlet received for this offense. In 2017, Moorlet pled guilty to felony assault with a dangerous weapon (felonious assault) and carrying a weapon during a felony (felony-firearm), for which he was sentenced to two to four years with the Michigan Department of Corrections. *Id.* Moorlet is charged in this case with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Indictment, ECF No. 11.

Moorlet now moves to suppress the gun recovered from the hired car he was driving in, arguing that the police lacked probable cause to arrest him and that they were operating outside of their jurisdiction at the time of the arrest. ECF No. 20.

## II.   LEGAL STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967)). "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)).

"A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *Utah v. Strieff*, 579 U.S. 232, 240 (2016). "Officers executing arrest warrants need not 'grade' the work of state judges by reevaluating whether they correctly found probable cause." *United States v. Baker*, 976 F.3d 636, 644 (6th Cir. 2020). In executing a warrant, "an officer may arrest the suspect without personally learning the facts establishing probable cause." *Id.* at 643. Furthermore, officers in one jurisdiction may rely on—and carry out—arrest warrants from other jurisdictions. *Id.* An officer who acts in an objectively reasonable manner by verifying and executing an arrest warrant does not violate the Fourth Amendment. *Id.* at 644.

While "[t]he Fourth Amendment generally requires police to obtain a search warrant before performing a search[,] … law enforcement officers may search a vehicle without a warrant if they have probable cause to believe it contains evidence of a crime." *United States v. Whitlow*, 134 F.4th 914, 919 (6th Cir. 2025) (citing *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011)). Probable cause is not a difficult standard to meet; it only requires a "fair probability" that an officer will find contraband or evidence of a crime. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (quotation omitted). And in determining whether a fair probability exists, the Court looks at the totality of the circumstances "through the common-sense lens of ordinary people, not the technical lens of trained lawyers." *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021). In general, when an officer makes a lawful custodial arrest based on probable cause, the officer is permitted to search the arrestee's person and areas in the arrestee's "'immediate control'" without a warrant and incident to the arrest. *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969) (construing area within arrestee's immediate control "to mean the area from within which he might gain possession of a weapon or destructible evidence")).

### III.  DISCUSSION

**A. Defendant's Request for an Evidentiary Hearing**

Moorlet's motion to suppress includes a request for an evidentiary hearing "so that the factual issue and credibility of the government witnesses can be determined." ECF No. 20, PageID.82. Although Moorlet's prior counsel stated that an evidentiary hearing was not necessary, his current counsel asserts that an evidentiary hearing is required.

On November 14, 2025, the Court heard oral argument on Moorlet's motion to suppress and counsel's argument as to why an evidentiary hearing is required. A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question." *United States v. Ikes*, 922 F.3d 708, 710 (6th Cir. 2019) (citing *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (emphasis in original)). Accordingly, the Court "look[s] to the motion itself to identify issues of fact warranting a hearing for further exploration; [it] do[es] not rely on a defendant's hope that a hearing will reveal fact issues on cross examination." *United States v. Gallagher*, No. 22-3277, 2022 WL 17688485, at *6 (6th Cir. Dec. 15, 2022).

At the hearing, Moorlet's counsel argued that an evidentiary hearing is required because Moorlet was arrested on December 10th but

8

the arrest warrant was dated December 11th. However, the Government does not dispute those facts. As discussed more fully below, the police officers had ample probable cause to stop and arrest Moorlet on December 10, 2024, even without the arrest warrant for the armed robbery in Warren. Moorlet's counsel also argued that an evidentiary hearing is required to assess the veracity of the arresting officers and whether all of them properly identified Moorlet before they stopped the vehicle he was in, or whether any of the officers had any doubt as to Moorlet's identity. However, the facts surrounding the stop and arrest of Moorlet are largely undisputed—the Warren police department's thorough investigation of the alleged armed robbery leading up to the complaint identified Moorlet as the armed robbery suspect, the ping data from his phone showed where he was located in Detroit, the police officers observed him come out of that residence wearing the same green coat and blue and black checkered Zoo York brand backpack as in the Ring doorbell footage from the Warren armed robbery, they saw him enter the hired car, and they shortly thereafter stopped the car and arrested Moorlet based on the probable cause that he committed the armed robbery, as well as the three separate arrest warrants. Arguments that the police officers lacked probable cause to stop and arrest Moorlet based on this undisputed objective evidence are entirely legal in nature and do not entitle Moorlet to an evidentiary hearing. *See United States v. Knowledge*, 418 F. App'x 405, 408 (6th Cir. 2011). And defense counsel's

9

desire to cross-examine the arresting officers as to whether they, individually, had any subjective doubt as to Moorlet's identity before his arrest (based on alleged bodycam video not in evidence) is not warranted because such details would not change the outcome here. *See United States v. Schumacher*, 611 F. App'x 337, 341 (6th Cir. 2015) ("[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."). Under the totality of the circumstances, even without the Warren arrest warrant, defense counsel does not dispute the validity of the other three arrest warrants, or whether the police could have properly stopped and arrested Moorlet based on those warrants. Where, as here, the contested questions as to whether there was probable cause to stop and arrest Moorlet are "entirely legal in nature," the Court may decide the motion without a hearing. *Ickes*, 922 F.3d at 710. Accordingly, Moorlet's request for an evidentiary hearing is **DENIED**.

### B. Moorlet's Motion to Suppress

Moorlet argues in his motion that he was stopped, arrested and searched, and interrogated by Warren police officers, in the City of Detroit, without "requisite cause—indeed any cause," and thus the gun seized incident to that arrest should be suppressed. ECF No. 20, PageID.89. He further contends that Michigan statutes restrict when police officers can operate outside their jurisdiction, citing M.C.L. § 764.2a, and that none of those requisite circumstances existed in this

10

case. *Id.* PageID.89–90. The Government responds that the Warren police had probable cause to arrest Moorlet for armed robbery and valid authority to make the arrest in the City of Detroit under Michigan law. The Court agrees and will **DENY** Moorlet's motion to suppress.

First, contrary to Moorlet's assertion that the police officers lacked "any cause" to stop and arrest him, at the time of Moorlet's arrest the Warren police officers had a valid complaint, sworn by a neutral magistrate, who determined that there was probable cause to believe Moorlet had committed the charged crime—armed robbery. Docket, ECF No. 26-3, PageID.250–53; Warrant, ECF No. 26-4.

The police also knew that there were three other outstanding arrest warrants for Moorlet at that time. LEIN, ECF No. 26-5. The police surveilled Moorlet's location, saw him get into the hired car wearing the same green coat and blue and black checkered Zoo York brand backpack as in the Ring doorbell video from the armed robbery, stopped the car, and arrested Moorlet. Under those facts, the Court finds that the police officers had sufficient cause under the Fourth Amendment to stop the car Moorlet was traveling in, arrest him, and search the vehicle for a weapon after Moorlet told the officers that he had a gun in his coat in the car. *See United States v. Smallwood*, Nos. 22-5947/23-5055, 2025 WL 1921246, at *2 (6th Cir. Jan. 28, 2025) (finding officers legally stopped defendant subject to an arrest warrant when they surveilled him on that day with the goal of arresting him on the outstanding arrest warrant, and knew

11

he was in the car) (citing *United States v. Pyles*, 904 F.3d 422, 424 (6th Cir. 2018) ("Once an officer discovers that a car's owner has an outstanding arrest warrant, he needs only reasonable suspicion that the owner is in the vehicle.")); *see also United States v. Buckner*, 717 F.2d 297, 299–300 (6th Cir. 1983) (recognizing that search and seizure was lawful where police had a warrant for defendant's arrest and reason to believe he was in the location searched).

Moorlet's counsel argued at the hearing that the fact that the Warren arrest warrant was dated December 11, 2024, the day after Moorlet was arrested, renders his arrest and the seizure of the gun unconstitutional. However, even without that Warren warrant, it is well settled that "[a] police officer may conduct a warrantless arrest of an individual when the officer has probable cause to believe that the individual has committed a felony or misdemeanor in the officer's presence or a felony away from the officer's presence." *United States v. Dicken*, 748 F. App'x 31, 36 (6th Cir. 2018) (citing *United States v. Watson*, 423 U.S. 411, 417–18 (1976)); see also M.C.L. § 764.15(b), (c) (permitting a police officer to arrest a person without a warrant if a felony has been committed and the officer has actual knowledge, or probable cause to believe, that the person committed it). The evidence in this case demonstrates that the Warren police had probable cause to arrest Moorlet for armed robbery, even if there were no warrant for his arrest, because the armed-robbery victim had identified Moorlet in a lineup,

police had matched photos on Moorlet's social media page to images of the robber leaving the victim's apartment, the officers tracked Moorlet's location by a ping warrant to a certain address, and when the police saw Moorlet leave that residence on the day of his arrest, he was wearing the same green coat and blue and black checkered Zoo York brand backpack as the armed robber. The police therefore had probable cause to arrest Moorlet for armed robbery based on that information.

Further, it is undisputed that the arresting officers were aware of three other outstanding arrest warrants for Moorlet at that time. These warrants further justified the stop and arrest of Moorlet on December 10, 2024. See *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) (defendant's outstanding warrant rendered probable cause to stop a vehicle and arrest the defendant, and "[t]he arrest and resulting search during which the handguns were found in no way violated the Fourth Amendment[.]"); *People v. Harris*, No. 362561, 2023 WL 8664499, at *2 (Mich. Ct. App. Dec. 14, 2023) ("A police officer may conduct a traffic stop when a person suspected of having an arrest warrant is observed in a vehicle.") (citing *People v. McKinley*, 661 N.W.2d 599, 603 (Mich. Ct. App. 2003)).

In addition to having probable cause to arrest Moorlet, the officers also had probable cause to search the vehicle for a weapon after Moorlet told the officers that he had a gun in his coat in the car. ECF No. 26-6, PageID.269; BodyCam Video at 1:32–1:45. But, it must be noted, Moorlet

13

made this statement in response to the officer asking him whether he had any weapons in the car. Perhaps because he was aware of the caselaw discussed below, Defendant did not challenge the use of Moorlet's custodial statement made in response to police questioning in the absence of any *Miranda* warnings. But because the issue is presented by these facts, the Court will address it. Although Moorlet was in custody at the time the officers asked if he had a weapon, knives, or a gun in the car, and it does not appear that the officers had apprised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), his statement is nevertheless admissible under the public safety exception to *Miranda*. When law enforcement officers ask "questions necessary to secure their own safety or the safety of the public" as opposed to "questions designed solely to elicit testimonial evidence from a suspect," officers are not required to inform the suspect of the warnings provided by *Miranda*. *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). The application of the public safety exception is based on the "objective facts" and takes into account factors such as (1) "the known history and characteristics of the suspect," (2) the "known facts and circumstances of the alleged" criminal acts, and (3) "that facts and circumstances confronted by the officer when he undertakes the arrest." *Id*. An officer must have reason to believe "(1) that the [suspect] might have (or recently have had) a weapon, and (2) that someone other than police might gain

14

access to that weapon and inflict harm with it" for the public safety exception to apply. *Id.*

In this case, it is clear that the question as to whether there were any weapons in the car was posed to Moorlet in order to protect the safety of the officers and others from a possible firearm or other dangerous weapon in the vehicle. The officers knew at the time of the arrest that Moorlet had allegedly committed an armed robbery recently, and that Moorlet had previously pled guilty to felony home invasion and felony assault with a dangerous weapon and carrying a weapon during a felony. And, the vehicle's hired driver was still in the car, which meant that the driver would have had access to a weapon or be exposed to the danger of coming upon it. The officers therefore reasonably asked Moorlet if he had any weapons in the car and did not question him further after receiving his answer. See *United States v. Long*, No. 1:23-CR-635, 2024 WL 1714292, at *3 (N.D. Ohio Apr. 22, 2024) (public safety exception applied where agents had reason to believe the defendant was armed or recently had a weapon and the defendant was not alone and so the passenger or other passerby could have retrieved and used the weapon); *United States v. Chaplin*, No. 1:16-CR-00001, 2017 WL 1365226, at *3 (W.D. Ky. Apr. 7, 2017) (public safety exception applied because "[t]he purpose of the traffic stop was to investigate whether [defendant] was in possession of firearms pursuant to a recent report" and the vehicle's passenger had access to firearms in the vehicle.").

15

Further, even if the officers violated Moorlet's *Miranda* rights when asking if there was a weapon in the car, the appropriate remedy for a *Miranda* violation is the exclusion of the statements provided without being read his *Miranda* rights, not the exclusion of physical evidence. *See United States v. Patane*, 542 U.S. 630, 643 (2004). In addition, Moorlet subsequently gave express consent for the officers to search his belongings in the vehicle, and the gun therefore would be admissible under the "inevitable discovery" doctrine. *See Nix v. Williams*, 467 U.S. 431, 444 (1984) ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received."). As discussed in this opinion, the officers were entitled to conduct a search of the vehicle Moorlet was in incident to his arrest. Thus, even if there had been a *Miranda* violation, the police would have discovered the gun through lawful means.

And, once Moorlet told the officers he had a gun in the car, they clearly had probable cause to search for it in the vehicle. "[A]n officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012); *see also New York v. Belton,* 453 U.S. 454, 460 (1981) ("When a policeman has made a lawful custodial arrest of the occupant of an

automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."); *United States v. Davis*, 997 F.3d 191, 195 (4th Cir. 2021) ("The search-incident-to-arrest exception allows arresting officers to search both the arrestee's person and the area within his immediate control.") (internal quotation marks and end citation omitted). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002). Here, after Moorlet was stopped and arrested, he told the police officers there was a gun in his coat in the car. The police officers therefore had probable cause to seize that gun. *See United States v. Collazo*, 818 F.3d 247, 259–60 (6th Cir. 2016) (holding that a driver's admission of possessing illegal substances established probable cause); *United States v. Jackson*, No. 1:20-CR-815, 2021 WL 2665750, at *3 (N.D. Ohio June 29, 2021) ("Defendant's admission that there were drugs in the vehicle and the officer's observation of an open alcohol container in plain view were sufficient to establish probable cause."). Moorlet's contention that the gun should be suppressed for lack of probable cause to arrest him therefore fails.

  Finally, Moorlet also contends in his motion that his gun should be suppressed because the Warren police officers arrested him in the City of Detroit, which he claims violates Michigan law, M.C.L. § 764.2a, which defines the authority of a peace officer acting outside of his or her

17

geographical jurisdictional boundaries. The Government responds that Michigan law specifically authorizes police officers to make arrests pursuant to arrest warrants in any county where the subject of the warrant can be found pursuant to M.C.L. § 764.2, which provides:

> If any person against whom a warrant shall be issued for an alleged offense committed within any county, shall, either before or after the issuing of such warrant, escape from or be out of the county, the sheriff or other officer to whom such warrant may be directed, may pursue and apprehend the party charged, in any county of this state, and for that purpose may command aid and may exercise the same authority as in his own county.

The Warren police officers therefore had authority to execute the arrest warrant of Moorlet in the City of Detroit.

In any event, even if the Warren police officers' actions here—arresting Moorlet in the City of Detroit pursuant to an arrest warrant—could be a violation of M.C.L. § 764.2a, it is well settled that any extra-jurisdictional limits imposed by that statutory provision are not imposed "to protect the rights of criminal defendants, but rather to protect the rights and autonomy of local governments," and thus would not require the suppression of evidence. *See People v. Zackery*, No. 292619, 2010 WL 3718830, at *2–3 (Mich. Ct. App. Sept. 23, 2010) (citing *People v. Hamilton,* 638 N.W.2d 92 (Mich. 2002), *overruled in part on other grounds*, *Bright v. Littlefield,* 641 N.W.2d 587 (2002)); *Mullins v. Moore*, No. 1:18-cv-681, 2018 WL 4610694, at *3 (W.D. Mich. Sept. 26, 2018)

(holding violations of § 764.2a "do not require the exclusion of evidence" and "the execution of a search warrant outside of an officer's jurisdictional limits does not raise a constitutional issue where the warrant is supported by probable cause and properly issued."); *United States v. Gordon*, No. 17-20067, 2017 WL 2602907, at *2 (E.D. Mich. June 15, 2017) (Cleland, J.) (rejecting argument that a violation of § 764.2a "is in any way connected to the exclusionary rule").

Furthermore, even if Moorlet's arrest were in violation of state law, such violation would not, by itself, provide a basis for granting the motion to suppress. In *United States v. Wright,* 16 F.3d 1429 (6th Cir. 1994), the Sixth Circuit held:

> [T]he appropriate inquiry for a federal court considering a motion to suppress evidence seized by state police officers is whether the arrest, search, or seizure violated the Fourth Amendment. *The fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.* This is so because the exclusionary rule is only concerned with deterring Constitutional violations. Furthermore, this rule promotes uniformity in federal prosecutions.

*Id.* at 1437 (emphasis added). As discussed above, Moorlet's arrest was based on probable cause and, therefore, did not offend the Fourth Amendment's prohibition against unreasonable searches and seizures. Accordingly, Moorlet's motion to suppress will be **DENIED**. *See Gordon*, 2017 WL 2602907, at *4; *see also Zackery*, 2010 WL 3718830, at *3 (officers' execution of arrest warrant outside their jurisdiction did not

amount to a constitutional violation and did not require dismissal of the criminal charge).

## IV.  CONCLUSION

Accordingly, for the reasons stated above, Defendant Ben Moorlet's Motion to Suppress Evidence, ECF No. 20, will be **DENIED**.

**IT IS SO ORDERED.**

Dated: November 19, 2025    /s/Terrence G. Berg
                                            HON. TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE